IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


D.F.,[1]

                    Plaintiff,

vs.                                       Case No. 21-1017-SAC

KILOLO KIJAKAZI,
Acting Commissioner of Social Security
Administration,

                    Defendant.


**MEMORANDUM AND ORDER**

Plaintiff has filed applications for disability insurance benefits and supplemental security income benefits. The applications alleged a disability onset date of April 15, 2019. The applications were denied initially and on reconsideration. An administrative hearing was conducted August 13, 2020. The administrative law judge (ALJ) considered the evidence and decided on September 8, 2020 that plaintiff was not qualified to receive benefits. This decision has been adopted by defendant. This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

I. Standard of review

To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42

---

[1] The initials are used to protect privacy interests.

U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program. See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file.  20 C.F.R. §§ 416.202-03, 416.330, 416.335.

The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.  See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  "Substantial evidence" is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305, U.S. 197, 229 (1938)).  This standard is "not high," but it is "'more than a mere scintilla.'" Id., (quoting Consolidated Edison, 305 U.S. at 229).  It does not require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007).

2

The court must examine the record as a whole, including whatever in the record fairly detracts from the weight of the defendant's decision, and on that basis decide if substantial evidence supports the decision. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994) (quoting Casias v. Secretary of Health & Human Services, 933 F.2d 799, 800-01 (10th Cir. 1991)). The court may not reverse the defendant's choice between two reasonable but conflicting views, even if the court would have made a different choice if the matter were referred to the court de novo. Lax, 489 F.3d at 1084 (quoting Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). The court reviews "only the sufficiency of the evidence, not its weight." Oldham v. Astrue, 509 F.3d 1254, 1257 (10th Cir. 2007).

"In addition, as long as '[the court] can follow the [ALJ's] reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal.'" Garcia v. Commissioner, SSA, 817 Fed.Appx. 640, 645 (10th Cir. 2020)(quoting Keyes-Zachary v. Astrue, 695 F.3d 1156, 1166 (10th Cir. 2012)). The court "'will generally find the ALJ's decision adequate if it discusses the uncontroverted evidence the ALJ chooses not to rely upon and any significantly probative evidence the ALJ decides to reject.'" Id., quoting Wall v. Astrue, 561 F.3d 1048, 1067 (10th Cir. 2009)).

3

II. Summary of the ALJ's decision

There is a five-step evaluation process followed in these cases which is described in the ALJ's decision. (Tr. 13-14). First, it is determined whether the claimant is engaging in substantial gainful activity. Second, the ALJ decides whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments which are "severe." At step three, the ALJ decides whether the claimant's impairments or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Next, the ALJ determines the claimant's residual functional capacity and then decides whether the claimant has the residual functional capacity to perform the requirements of his or her past relevant work. Finally, at the last step of the sequential evaluation process, the ALJ determines whether the claimant is able to do any other work considering his or her residual functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that there are jobs in the economy with the claimant's residual functional capacity. Id.

The ALJ made the following specific findings in her decision. First, plaintiff has met the insured status requirements for Social Security benefits through December 31, 2024.  Second, plaintiff has not engaged in substantial gainful activity since April 15, 2019.  Third, plaintiff has degenerative disc disease and obesity which are "severe" impairments.  Plaintiff also has generalized anxiety disorder, but this does not cause more than a minimal limitation upon plaintiff's ability to perform basic mental work activities and is therefore non-severe.

Fourth, plaintiff does not have an impairment or combination of impairments that meet or medically equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(c) except that: plaintiff can lift/carry 50 pounds occasionally and 25 pounds frequently, can stand/walk 6 or more hours in an 8-hour day with normal breaks, and sit for 6 or more hours in an 8-hour workday with normal breaks.  Finally, the ALJ determined that plaintiff is capable of performing his past relevant work as a fast food manager, fast food worker/crew worker, reservation clerk, and customer service worker.  Further plaintiff would be able to perform the requirements of such jobs as dining room attendant, counter supply worker, and kitchen helper.

III. <u>The denial of benefits shall be affirmed.</u>

Plaintiff contends that the ALJ failed to properly assess his mental impairments.  He asserts that substantial evidence does not support the ALJ's finding that the impairments are not severe.  He further claims that the ALJ improperly failed to consider the impact of plaintiff's mental impairments upon plaintiff's RFC. For the following reasons, the court rejects plaintiff's arguments to reverse the denial of benefits.

A. <u>The ALJ's findings as to plaintiff's mental impairments</u>

The ALJ found that plaintiff had a medically determinable mental impairment of generalized anxiety disorder, but that it did not cause more than a minimal limitation in plaintiff's ability to perform basic mental work activities.  (Tr. 15).  Therefore, she categorized it as non-severe.[2]  In reaching that finding, the ALJ discussed evidence of plaintiff's mental functioning in four areas:  1) understanding, remembering or applying information; 2) interacting with others; 3) concentrating, persisting or maintaining pace; and 4) adapting or managing oneself.  These so-called "paragraph B" criteria were evaluated as part of the ALJ's step-two and step-three analysis.  She found that plaintiff had

---

[2] "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities. . . . [including]: . . . (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine setting."  20 C.F.R. §§ 404.1522(a)&(b) and 416.922(a)&(b).

mild limitations in the first three categories and no limitation in the fourth.   The ALJ cited numerous exhibits in the medical record to support her conclusions.

The ALJ stated that the RFC assessment at step-four and step-five reflected the degree of limitation found in the paragraph B analysis.   (Tr. 16).   The ALJ remarked further that plaintiff's examinations showed that his anxiety was stable, and that plaintiff's limited counseling examinations with social worker Glenn Sherwood produced normal findings as to mood and affect, judgment, insight, memory, and attention span and concentration. She discounted the later findings of another social worker which showed limited judgment and recent memory, and impaired attention, as inconsistent with the longitudinal history provided by Sherwood.   In general, the ALJ concluded that the low number of treatment records did not support plaintiff's alleged limitations because "the majority of the available mental status examinations were rather normal and [plaintiff] repeatedly reported stability of his anxiety at examinations." (Tr. 16).   She relied upon these reports to find that plaintiff's generalized anxiety disorder was non-severe.   (Tr. 16).

The ALJ also relied upon the state agency consultants, Steven Akeson, Psy.D. and Dr. Scott Shafer who concluded that plaintiff's mental impairments were non-severe.   (Tr. 16-17).   She considered their opinions to be well-supported, thoroughly explained and

consistent with the record, including the treatment records of plaintiff's primary care physicians and examinations "largely show[ing] no anxiety."  (Tr. 17).

Finally, the ALJ discussed the opinions of Dr. Gary Hackney and Mr. Sherwood.  The ALJ found their opinions to be unpersuasive because their conclusions were inconsistent with the record of relatively normal mental status examinations and therapy sessions. She also observed that plaintiff was not cooperative with Dr. Hackney and plaintiff's effort was poor.

B. The ALJ performed a proper step-four analysis.

Plaintiff disagrees with the ALJ's step-two finding that plaintiff's mental impairments are not "severe," but focuses his attack upon the ALJ's step-four RFC analysis.  Doc. No. 13, p. 7 (citing Wells v. Colvin, 727 F.3d 1061, 1068 (10th Cir. 2013)(suggesting harmless error at step two if other severe impairments, besides mental impairments, are found)).  Therefore, the court examines the ALJ's step-four analysis.[3]

Plaintiff contends that the ALJ erred in her step-four analysis by relying on her step-two findings and failing "to even

---

[3] Plaintiff also cites Grotendorst v. Astrue, 370 Fed.Appx. 879, 882 (10th Cir. 2010).  This case is distinguishable from Grotendorst.  In Grotendorst, the ALJ, contrary to regulations, did not rate the claimant's mental limitations in the four broad functional areas listed in 20 C.F.R. § 404.1520a(c)(3).  Here, the ALJ performed that step in her decision.  (Tr. 15-16).  Also, the ALJ in Grotendorst misstated the record regarding mental health treatment.  370 Fed.Appx. at 882-883.

mention mental impairments beyond her step-two analysis." Doc.
No. 13, p. 8. The court disagrees.

The ALJ stated:

> The limitations identified in the "paragraph B" criteria
> are not a residual functional capacity assessment but
> are used to rate the severity of mental impairments at
> steps 2 and 3 of the sequential evaluation process. The
> mental residual functional capacity assessment used at
> steps 4 and 5 of the sequential evaluation process
> requires a more detailed assessment. The following
> residual functional capacity assessment reflects the
> degree of limitation the undersigned has found in
> "paragraph B" mental function analysis.

(Tr. 16). Then, as already noted, the ALJ reviewed and discussed
plaintiff's treatment records, examination findings and the
opinions of the administrative consultants (Dr. Shafer and Mr.
Akeson), the consulting and examining psychologist (Dr. Hackney),
and the therapist (Mr. Sherwood) who also examined plaintiff. (Tr.
16-17). The ALJ found that plaintiff's examinations repeatedly
showed his anxiety was stable. He observed that plaintiff's
limited counseling examinations with Mr. Sherwood showed that
plaintiff had mostly an appropriate mood and affect, realistic
judgment, normal insight, normal memory, and normal attention span
and concentration. The ALJ characterized the majority of mental
status exams as "rather normal." (Tr. 16). The ALJ considered
the consultative opinion of Dr. Gary Hackney, but discounted it
because plaintiff was "evasive, negative, and minimally
cooperative." (Tr. 17). He also considered Dr. Hackney's

conclusions inconsistent with the record showing rather normal results. Further, the ALJ took account of Mr. Sherwood's opinions and statement. He found them unpersuasive because they were not consistent with the record or his sessions, and not supported by the evidence. The ALJ determined that the findings of Dr. Shafer and Mr. Akeson were persuasive and consistent with examinations showing no anxiety. The ALJ said their findings gibed with the record and were supported by the evidence.

The approach taken by the ALJ is similar to one approved by the Tenth Circuit. Cf., Suttles v. Colvin, 543 Fed.Appx. 824, 825-26 (10th Cir. 2013). It should be considered a step-four analysis.

Plaintiff cites Boyer v. Colvin, 2016 WL 1170950 (D.Kan. 3/23/2016) to support his position. There, the court found insufficient backing for an ALJ's step-two conclusion that the claimant's mental impairments did not limit her capacity for work. The ALJ gave substantial weight to opinions of agency consultants, but, without explanation, did not credit the consultants' opinions that the claimant had mild limitations in three categories of mental functioning. Boyer is distinguishable from the record in this case because the ALJ's step two analysis conforms with the findings of the agency consultants that the ALJ considered persuasive.

C. Substantial evidence supports the step-four analysis.

The remainder of plaintiff's arguments concern whether there is substantial evidence to support the ALJ's step-four analysis. Plaintiff cites Wells, but the court finds the case distinguishable. In Wells, 727 F.3d at 1069-71, the court determined that the ALJ relied upon statements or assessments made prior to the alleged onset date, statements regarding the claimant's activities which "were much more nuanced" than acknowledged by the ALJ, and part-time or short-time work experience that did not demonstrate an ability for full-time work.[4] The court does not observe those sorts of deficiencies in the ALJ's opinion here.

Plaintiff also cites Stookey v. Colvin, 2014 WL 3611666 *3-4 (D.Kan. 7/22/2014). In Stookey, this court held that the ALJ erred by failing to include functional limitations from the claimant's mental impairments (depression and anxiety) in the hypothetical to the vocational expert without explaining why the evidence supported excluding such limitations. The ALJ had determined at step-two that plaintiff had mild limitations in two functional areas. This court held that the ALJ failed to support his decision with a discussion of the evidence of depression and anxiety and

---

[4] This was the basis for the court's reversing the denial of benefits in Wells. The court noted that the ALJ's discussion of the claimant's mental impairments "might have satisfied the ALJ's obligation at step four," but the ALJ's conclusions were not supported by substantial evidence.  727 F.3d at 1069.

any conclusion on the limitations caused by those conditions. This required reversing the denial of benefits, particularly given evidence showing repeated treatment for the mental conditions, increased dosages of medication, and a medical statement from the claimant's treating physician.

In contrast to the ALJ in Stookey, who used "boilerplate" to explain and support his analysis, the ALJ in the case at bar engaged in a discussion of the evidence to support her findings at step-two and step-four. The court believes those findings are supported by substantial evidence.

Many records show that plaintiff was suffering no anxiety or hallucinations at the time of a medical visit. E.g., Tr. 266 (11/20/18); Tr. 264 (3/11/2019); Tr. 261 (3/14/2019); Tr. 366 (3/29/2019); Tr. 257 (5/9/2019); Tr. 254 (5/23/2019); Tr. 240 (6/18/2019); Tr. 270 (8/5/2019); see also, Tr. 306 (anxiety stable, cooperative, normal judgment, appropriate mood and effect). Dr. Shafer's opinion relied upon these records as well as plaintiff's mother's third-party function report. (Tr. 64). That report (Ex. 7E) indicates that plaintiff went out daily, preferred to eat out, and socialized with friends and family multiple times a month. She also recorded that plaintiff was good at following written and spoken instructions.

Mr. Sherwood's records often recorded that: plaintiff's speech was normal; his mood and affect were appropriate; his

12

thought processes were logical and relevant; his judgment was realistic; and his attention span and concentration were normal. E.g., Tr. 544 (7/11/2019); Tr. 546 (8/22/2019); Tr. 547 (9/5/2019); Tr. 549 (9/19/2019); Tr. 552 (10/17/2019); Tr. 553 (12/12/2019).

Under the regulations applicable to this case, the ALJ was not required to defer or give any specific weight, including controlling weight to any medical opinion, including an opinion from a claimant's medical source. 20 C.F.R. §§ 404.1520c(a), 416.920c(a)(2017). The regulations provide that the ALJ will consider five factors in evaluating a medical opinion: supportability; consistency; relationship of source to claimant; specialization, and other factors tending to support or contradict a medical opinion. 20 C.F.R. §§ 404.1520c(a)(c)(1–5), 416.920c(a)(c)(1–5)(2017). The most important factors are supportability and consistency. Id.

While there are examples of examination or therapy sessions where anxiety findings were recorded (e.g., Tr. 545 (8/8/2019); Tr. 323 (9/4/2019); Tr. 510 (9/18/2019); Tr. 527 (11/13/2019); Tr. 522 (12/9/2019)), the court finds that the ALJ's opinion addresses the consistencies and inconsistencies in the record and links his RFC determination with specific evidence. His conclusions are supported such that a reasonable person could concur with his findings. The court notes that the ALJ did not conclude that plaintiff had no mental impairment or no limitations from a mental

13

impairment.   Rather, she found that plaintiff's limitations were minimal.

Plaintiff suggests that plaintiff's symptoms have worsened over time and that the Dr. Shafer's opinion fails to consider the longitudinal record.  This argument, however, is not supported by any statement from plaintiff or from a medical source indicating that plaintiff's condition has worsened since 2018 or 2019.  It does not persuade the court that the ALJ's findings lack substantial supporting evidence.

Citing Smith v. Astrue, 2009 WL 1580311 *8 (D.Kan. 6/4/2009), plaintiff contends that the ALJ placed too much weight upon treatment notes that made only general observations, and did not address categories of mental functioning.  Unlike Smith, the treatment notes in this case made specific findings of "no anxiety," "normal" attention span and concentration, and appropriate mood and effect.  The court believes these treatment notes are more inconsistent with the opinions discounted by the ALJ than the notes mentioned in Smith.

Plaintiff's citation to Barker v. Astrue, 2009 WL 3855969 *5 (W.D.Okla. 11/17/2009) is also distinguishable.  In Barker, the court found that the ALJ read treatment notes out of context and disregarded evidence showing fluctuations in the claimant's mental

condition.[5]   The evidence of fluctuation in this case is not as compelling as in Barker and the court does not believe the ALJ read treatment notes out of context.  Indeed, the ALJ's reading of the record is in accord with the review by the Dr. Shafer and Mr. Akeson.

In summary, the court concludes that the ALJ followed the law and that her factual findings are supported by substantial evidence.

IV. Conclusion

As explained in this memorandum and order, the court rejects plaintiff's arguments to reverse and remand the denial of benefits to plaintiff.

**IT IS THEREFORE ORDERED** that judgment be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the decision to deny benefits.

Dated this 28th day of September 2021, at Topeka, Kansas.


s/Sam A. Crow
U.S. District Senior Judge

---

[5] The court notes that the therapist had a five-year history of treating the claimant.  Also, many of the treatment notes relied upon by the ALJ in Barker were from dates after last insurance.